IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00221-RBJ
Civil Case No. 18-cv-00703-RBJ

UNITED STATES OF AMERICA,

 Plaintiff,

v.

MICHAEL ALVARES FYKES,

 Defendant.

---

## ORDER ON PENDING MOTIONS

---

 Michael Alvarez Fykes moves (1) to vacate his conviction pursuant to 28 U.S.C. § 2255, ECF No. 150; (2) for the return of property, ECF No. 165; (3) for the appointment of an independent digital forensic specialist, ECF No. 166; (4) for leave to supplement his habeas petition, ECF No 168; and (5) for a judicial recommendation for an expansion of the residential reentry portion of his sentence from six to twelve months, ECF No. 169. The Court denies the motions to vacate and for appointment of an expert; grants the motions for return of property and supplementation of the habeas petition; and grants in part the motion for a reentry recommendation.

### BACKGROUND

 On February 1, 2015 two men in a red sedan, Michael Fykes and Ron Trueblood, were arrested by Colorado Springs police officers on suspicion of human trafficking. During an inventory search of the vehicle police found a black backpack in the trunk that contained a handgun and a passport. The police officers then obtained a search warrant for the backpack. Ultimately, they determined that the backpack contained a loaded revolver, a U.S. passport in the

name of Mr. Fykes; a laptop computer that contained a medical damages document of Mr.

Fykes; a cell phone charger that fit Mr. Fykes's cell phones, and a container of cigarillos that

were similar to cigarillos found close to Mr. Fykes's seat.

The human trafficking offense was not pursued.[1] The state charged Mr. Fykes with being

a felon in possession of a firearm, but the state prosecutor deferred to a federal prosecution when

the United States charged Mr. Fykes with the same offense. The case was tried to a jury August

26-28, 2015, resulting in a conviction. ECF No. 94 (redacted Jury Verdict). On January 29,

2016 the Court sentenced Mr. Fykes to 60 months in prison and three years of supervised release.

Judgment entered on February 1, 2016. ECF No. 113. The Judgment was later amended to

correct a clerical error. *See* ECF No 139.

On February 3, 2017 the Tenth Circuit issued its order affirming the conviction and

sentence. *United States v. Fykes,* 678 F. App'x 677 (10th Cir. Feb. 3, 2017) (unpublished). The

mandate issued on February 27, 2017. ECF No. 141. Mr. Fykes later moved for modification of

the Probation Department's Presentence Investigation Report, noting that the report referred to

the "uncharged and unproven pimping allegations," which impacted his inmate classification by

the Bureau of Prisons and resulted in his being sent to a Federal Correctional Institution without

camp eligibility. ECF No. 142. I denied the motion. ECF No. 143. Mr. Fykes appealed that

order. ECF No. 144. On May 15, 2018 the Tenth Circuit remanded the case with directions to

vacate the denial of the motion and instead to dismiss the motion for lack of jurisdiction. 733 F.

App'x 950 (10th Cir. May 15, 2018) (unpublished). That mandate issued on June 6, 2018. ECF

Nos. 163).

---

[1] Government counsel asserts that the charges were dropped because the victim was not found. ECF No.
134 at 42.

# HABEAS PETITION – STANDARD OF REVIEW

On March 3, 2018 Mr. Fykes, representing himself pro se, filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. ECF No. 150. Such motions are often referred to as habeas petitions. Mr. Fykes asserts that (1) his trial counsel was ineffective, *id.* at 14-27; and (2) the Court should reconsider an upward variance because it relied on pending charges that have since been dismissed. *Id.* at 28. The government has filed a response. ECF No. 155. Mr. Fykes has filed a reply, ECF No. 162, and a supplement to his motion, ECF No. 168-1.

A district court may dismiss a § 2255 motion without holding a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). I must construe the habeas application liberally because Mr. Fykes is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

"'Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to §2255.'" *Warren v. United States,* 706 F. App'x 509, 511 (10th Cir. Aug. 24, 2017) (unpublished) (quoting *United States v. Prichard,* 875 F.2d 789, 791 (10th Cir. 1989)). "'When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered.'" *Id.* (quoting *United States v. Cox,* 83 F.3d 336, 341 (10th Cir. 1996)).

"To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defense was prejudiced by that deficient performance." *Smith v. Duckworth,* 824 F.3d 1233, 1249 (10th Cir. 2016) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)) (emphasis added). "An insufficient showing on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Id.* Deficient performance means that that counsel's representation was objectively unreasonable, i.e., that "'it amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 105 (2011)). Prejudice requires the defendant to "show that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. *Id.*

## ANALYSIS AND CONCLUSIONS[2]

## I. MOTION TO VACATE (HABEAS PETITION).

### A. <u>Ineffective Assistance of Counsel</u>.

In his habeas petition, ECF No. 150, Mr. Fykes argues that his trial counsel was ineffective for two reasons: first, he neither called Ron Trueblood as a witness nor sought a continuance in order to bring Mr. Trueblood in; and, second, he did not challenge the criminal history points assigned to a prior felony conviction. I do not agree with either argument.

---

[2] For the reasons set forth in this order, I find that the motion and the files and records of the case conclusively show that Mr. Fykes is entitled to no relief. Therefore, I decline to set a hearing on his petition. *See* 28 U.S.C. § 2255(b).

1. Failure to Call Ron Trueblood as a Witness.

Mr. Trueblood, as noted above, was arrested with Mr. Fykes.  He denied knowledge of the gun and, according to the arresting officers, said that the gun must belong to Mr. Fykes.  At some point thereafter he left the state.

Mr. Fykes's lawyer, Edward R. Harris of the Office of the Federal Public Defender, naturally wanted to know whether Mr. Trueblood might provide helpful testimony.  On June 23, 2015, after several unsuccessful attempts, an investigator working with Mr. Harris, Raelee Knapp, was able to get Mr. Trueblood on the phone.  A memorandum of her telephone interview is attached to Mr. Fykes's habeas petition.  ECF No. 150 at 31-34.

Mr. Trueblood told Ms. Knapp that he was in Minnesota, basically homeless, and moving from location to location without a permanent address.  *Id.* at 32.  He declined to provide detailed information about a "female friend" whom he was with on the day in question because of the original charges that were filed against him in Colorado.  Regarding the gun in the backpack, Mr. Trueblood denied that he told officers that the gun "must be Fykes," but he confirmed that the gun was not his.  The investigator's memo states, "Ron confirmed with me that the gun that was found in the trunk of his car was NOT his gun."  *Id.* at 34 (capitalization in original).  He denied ever seeing the gun or handling the gun.  *Id.*  He denied asking Mr. Fykes for a bag or backpack to pack some of his belongings in.  He said that he did not know how the backpack got into the trunk of his car, and that he could not recall whether Mr. Fykes had the backpack with him when he picked Mr. Fykes up that morning.  *Id.*  Ms. Knapp added that Mr. Trueblood was reluctant to speak with her, and that "[w]hen asked questions about the gun, Ron would hesitate before

answering, but always indicated that the gun was not his and that he had no knowledge of the gun." *Id*

In his statements to the police, in addition to stating that he had no knowledge of the gun in the backpack, Mr. Trueblood also denied that he carried a gun. The defense found an ATF form indicating that in 2014 Mr. Trueblood had purchased a gun. Mr. Harris wanted the Court to admit the ATF form notwithstanding the absence of either the ATF agent or Mr. Trueblood at trial, which I declined to do. In a motion asking the Court to reconsider that ruling (which I did not), Mr. Harris stated, **"As a matter of strategy, counsel prefers not to call Mr. Trueblood as a witness. Further, even if he were inclined to call Mr. Trueblood, it now appears that Mr. Trueblood is unavailable and cannot be found."** ECF No. 70 at 2, ¶4 (bolding added).

Mr. Fykes now asserts that this strategy was wrong. He claims that the gun belonged to Mr. Trueblood, and that Mr. Trueblood would have admitted that under oath. He provides an affidavit of a lawyer named Phillip Dubois who represented him in the state's aborted prosecution of the felon in possession charge. ECF No 150. In the affidavit Mr. Dubois claims to have overheard a conversation between Mr. Fykes and Mr. Trueblood during which Mr. Trueblood acknowledged that the gun was his and said he would accept responsibility for it. *Id.* at 37.

A defendant has certain basic rights that his lawyer may not override, such as whether to plead guilty, waive a jury trial, testify in his own behalf, and forgo an appeal. *McCoy v. Louisiana,* 138 S. Ct. 1500, 1508 (2018). However, the reason one has a lawyer is to obtain the benefit of his judgment on matters of strategy such as whether to call a particular witness. Here, Mr. Harris's judgment was that Mr. Trueblood's testimony would not be helpful. There was good reason for that – Mr. Trueblood unequivocally told Mr. Harris's investigator that it was not

his gun. Moreover, as I discuss later, Mr. Fykes's testified at trial that Mr. Trueblood borrowed his backpack. Mr. Trueblood's statement to the defense investigator refuted that story.

I also note that when the investigator tracked Mr. Trueblood down by phone, Mr. Trueblood said he was in Minnesota and moving from place to place. That was on June 17, 2015. Mr. Harris's motion in which he informed the Court that he did not wish to call Mr. Trueblood was filed on August 21, 2015 – five days before trial. At that time Mr. Harris advised the Court that "even were he inclined to call Mr. Trueblood, it now appears that Mr. Trueblood is unavailable and cannot be found." ECF No. 70 at 2.

As for Mr. Dubois, his affidavit is dated March 6, 2018, approximately two and one-half years after the trial. There is no evidence in the record that Mr. Harris was aware of the allegedly overheard conversation. Moreover, even if he were so inclined, Mr. Dubois could not have testified at trial about what he claims to have heard Mr. Trueblood say, because it would have been inadmissible hearsay. It comes back to what Mr. Trueblood would have testified had it even been possible for Mr. Harris to get him into court.

I find that Mr. Fykes has not shown that Mr. Harris's strategic decision not to call Mr. Trueblood was objectively unreasonable. *Smith,* 824 F.3d at 1249. That alone means that he hasn't established ineffective assistance of counsel under the first *Strickland* prong. And that also accounts for his argument that Mr. Harris should have sought a continuance of the trial in order to try to find and bring Mr. Trueblood to court and Mr. Fykes' argument about the confrontation clause. Mr. Fykes was able to confront the witnesses who testified against him. The right of confrontation is not a right to have a witness called to testify for him.

Although unnecessary, I note that Mr. Fykes also has not established the second *Strickland* prong with respect to the decision not to call Mr. Trueblood. To even get there I

would have to assume that Mr. Harris could have located Mr. Trueblood; and that he could have compelled or persuaded Mr. Trueblood to return to Colorado and testify; and that Mr. Trueblood would have testified that it was his gun, and that Mr. Fykes didn't know it was in the backpack (because the charge was possession, not ownership). Even if all those assumptions proved true, the credibility of Mr. Trueblood's testimony would be subject to substantial challenge because he had denied that the gun was his at time it was discovered and in his statements to Mr. Harris's investigator two months before trial. Significantly, Mr. Trueblood's testimony would not change the circumstantial evidence pointing to Mr. Fykes.

Mr. Fykes tried to explain the circumstantial evidence when he testified on his own behalf at trial. He testified that Trueblood borrowed his backpack; Mr. Fykes's passport was in the backpack when Mr. Trueblood borrowed it; the laptop was Mr. Trueblood's, but Mr. Fykes had downloaded a document so that he could make a print copy at the library; the cellphone chargers weren't his, and the cigarillos weren't his. The jury did not find his story to be credible.

I conclude that Mr. Fykes has not established that Mr. Harris was ineffective for failing to call Ron Trueblood as a witness or for failing to seek a continuance of the trial to try to find Mr. Trueblood and then bring him in to testify. Further, even if Mr. Trueblood could have been brought to court at a later date, I conclude that Mr. Fykes has not established a reasonable probability that the outcome of the trial would have been different.

2. (Alleged) Failure to Discredit his 1992 Conviction.

Mr. Fykes's second argument regarding ineffective assistance of counsel is that Mr. Harris did not challenge the assessment of three criminal history points to Mr. Fykes's 1992 felony conviction for three counts relating to distribution of crack cocaine. Mr. Fykes argues that under current guidelines he would have been sentenced to between 41 and 51 months in the

1992 case; he therefore would have been released earlier; and as a result, the 1992 conviction would have been too old to have been counted in his criminal history. *See* ECF No. 150 at 26.

First, Mr. Harris raised the same argument in his direct appeal. *See United States v. Fykes,* 678 U.S. at 689. The Tenth Circuit rejected the argument, noting that this Court had "provided a reasonable explanation for declining to shorten the sentence based upon the 1992 conviction and otherwise justified the extent of the variance." *Id.*

Second, his suggestion that Mr. Harris didn't challenge the relevance of the 1992 conviction is simply wrong. In fact, Mr. Harris had a lot to say about that conviction. He successfully objected to the Probation Office's description of that case in its preliminary draft PSI. *See* ECF No. 104 at 2; ECF Nos. 106 at ¶36 and 107 at A-1. Then, at the sentencing hearing, Mr. Harris advised the Court that he had represented Mr. Fykes in the 1992 case. ECF No. 134 (transcript) at 5. The guideline range was 92 to 115 months. According to Mr. Harris, "Judge Matsch bemoaned the fact that he was bound under those Guidelines to sentence him that high," although he sentenced Mr. Fykes to 100 months. Mr. Harris asked me to take that into account for equitable reasons when sentencing Mr. Fykes. *Id.* at 5-6.

Mr. Harris also pointed out that the 1992 case was sentenced under mandatory guidelines that embraced a since-discredited 100-to-1 crack cocaine ratio, and that if the 1992 sentence were eliminated, Mr. Fykes's criminal history category would be category I, and his range would be 10 to 18 months. *Id.* at 6-7. Finally, he argued that it was "fundamentally unjust" for a 25-year old case to drive the sentencing in the present case. *Id.* at 7. I responded that a 1992 crack cocaine conviction would not drive my sentence, and that the 1992 case was the "least of my concerns in coming up with a fair sentence for this fellow for this case. That's water under the dam years ago." *Id.* at 7-8.

The 1992 conviction was what it was. The court's sentence in that case was in accordance with the law and the guidelines at that time, and Mr. Fykes served the sentence. The Probation Office correctly calculated the impact that case had on Mr. Fykes's criminal history category, not what hypothetically might have been if the crack cocaine guidelines had been different at the time. Mr. Harris nevertheless aggressively argued on equitable grounds that this Court should not let that conviction or the resultant criminal history calculation drive my sentence in the present case. Mr. Fykes has not shown that Mr. Harris's efforts were objectively unreasonable. Indeed, the arguments were vigorously made at sentencing and again on direct appeal. Nor has he shown prejudice. On the contrary, I assured Mr. Harris and Mr. Fykes at the sentencing hearing that that old case would not drive my sentence, and it did not. I had other reasons for imposing the sentence imposed, and the appellate court accepted those reasons.

3. Conclusion – Ineffective Assistance of Counsel.

Because Mr. Fykes has not made a convincing showing of objectively unreasonable or incompetent performance by his experienced trial counsel or that there is a reasonable probability that what he now contends trial counsel should have done would have made a difference in the outcome of his case or sentence, the charge of ineffective assistance of counsel is rejected.

**B. Upward Variance.**

In addition to his ineffective assistance of counsel argument, Mr. Fykes asks the Court to modify its sentence for a second reason. His argument, in his own words, is:

> During the Sentencing Hearing, the Court chose to apply an Upward Variance in its determination of Petitioner's sentence. In doing so, the Court used four (4) pending driving under the influence charges as its basis for the variance. However, three of the pending charges have been dismissed by the appropriate State courts. The Sentencing Court should now reconsider the upward variance it used in its sentencing determinations.

ECF No. 150 at 28.

To put this in context, Mr. Fykes's criminal history at the time of sentencing included three juvenile adjudications for felony level offenses (two cocaine-related narcotics offenses and one attempted robbery). ECR No 106, at 9-10. He had two adult felonies (menacing and theft) before the 1992 crack case. None of those offenses received any criminal history points. After the 1992 crack conviction Mr. Fykes had a DUI in 2002, (0 points); felony possession of crack cocaine in 2002 (0 points); a DWAI in 2009 (1 point); and an open alcohol/drink in vehicle in 2010 (0 points). Finally, at the time of sentencing there were four pending alcohol-related driving cases, in each of which failure to appear warrants were outstanding: (a 2009 driving while intoxicated in Dallas; a 2013 driving under the influence in California; a 2013 driving while intoxicated in Missouri; and a 2015 driving under the influence in Colorado. ECF No. 106 at 9-15.

During the sentencing I mentioned the four pending "DUI" cases and noted that they were pending because Mr. Fykes had failed to appear in each case. ECF No 134 at 8. I acknowledged that the 2015 FTA was because he was in custody at that time. I indicated that I did consider the pending cases to be "somewhat significant" because of that history and because Mr. Fykes already had two DUI convictions, *Id.* at 8.

Under the Federal Sentencing Guidelines I found that Mr. Fykes's Offense Level was 20 (after rejecting a proposed four-level increase), and that his Criminal History Category was IIIECF No 134 at 57-59. That would generate a recommended range of 41-51 months. However, I found that category III substantially understated Mr. Fykes's criminal history and explained by going over his long history of offenses, just as I have listed them again in this order.

*Id.* at 59-62.  I found that I could depart upwards under Guideline 4A1.3(a)(2) or vary upwards.[3]

Looking at the case as if Mr. Fykes hypothetically were at criminal history category IV, the

range would be 51-63 months.  I concluded that 60 months was a fair and appropriate sentence.

*Id.* at 63.

Mr. Fykes informs the Court that since that time three of the four then-pending DUI cases

have been dismissed.  He attaches copies of the orders of dismissal.  The 2015 case (where his

failure to appear was because he was in federal custody) was dismissed because the D.A. was not

able to obtain Mr. Fykes's appearance for trial.  ECF No. 150 at 42.  No specific reason is given

for the dismissal of the California case.  *Id.* at 43.  The Texas case was dismissed because it had

been pending more than five years, the whereabouts of the defendant were unknown, and "[i]t is

desirable to clear the docket of the Court of cases which cannot be prosecuted."  *Id.* at 44.  The

Missouri case is still pending.  Notably, in none of the three dismissed cases was Mr. Fykes

exonerated.

Accordingly, I have no reason to back away from the upward variance due to the

dismissal of the three cases.  In any event, the pending cases were only a part of the explanation I

provided for varying upwards in the first place. And, finally, the upward variance was sustained

on direct appeal.  *United States v. Fykes,* 678 F. App'x at 686-90.

### C.  Conclusion: Habeas Petition.

For the foregoing reasons, the Court denies Mr. Fykes's habeas petition, i.e., his motion

to vacate his conviction and sentence, or modify the sentence, pursuant to 28 U.S.C. § 2255.

---

[3] The Tenth Circuit noted that I failed to give advance notice of an intent to depart as required by Fed. R.
Crim. P. 32(h).  That was an error, but the court did not find my error to be prejudicial since I also varied
upwards for the same reasons.  *United States v. Fykes*, 678 F. App'x at 6876-88.

## II. MOTION FOR RETURN OF PROPERTY.

Mr. Fykes moves for the return of certain property that was taken from him when he was arrested by the Colorado Springs Police Department and that he claims is in the possession of the United States Attorney's Office, i.e., Property Item ("P.I.") 000014, the contents of his wallet; P.I. 000016, three cell phones; and P.I. 0000004, his passport. He also asks the Court to direct the United States Attorney's Office to forward a release order to the Colorado Springs Police Department for the release of $204.00 in cash that was taken from him when he was arrested. He adds that if any of the items were still needed as evidence, he would not object to the admission of copies in place of the originals. ECF No. 165. The government has not responded, and the Court deems the motion to be confessed.

## III. MOTION FOR APPOINTMENT OF INDEPENDENT DIGITAL FORENSICS SPECIALIST PURSUANT TO FED. R. EVID 706(a), (b).

Mr. Fykes asks the Court to appoint an expert to examine the laptop computer found in the backpack. "This will assist the Court with its determination that Movant is and was actually innocent of constructive possession of the firearm." ECF No. 166 at 1. The examination will show that Mr. Fykes did not access the computer during "the time period in question." ECF No. 166 at 2.

Before filing the present motion Mr. Fykes filed a somewhat similar motion to compel discovery for purposes of his § 2255 petition. ECF No. 156. He wanted the government (1) to provide documentation of when the laptop was last used and the server to which the laptop was connected, and (2) to produce evidence concerning whose finger prints were found on the laptop. *Id.*

In response, the government disputed his entitlement to such discovery under Rule 6 of the Rules Governing Section 2255 Proceedings. ECF No. 158 at 1-2. The government also reminded Mr. Fykes and the Court of the following evidence presented at trial:

- Detective Brian Rodgers, a digital forensic scientist with the Colorado Springs Police Department, testified that he reviewed the laptop in an attempt to determine usage and ownership. He wasn't able to determine those things conclusively. However, he did find the medical damages document with the name of Michael Fykes and determined that the laptop was last used on February 1, 2015 at 2:06 a.m.

- Sharon Morales, a crime scene investigator with the El Paso County Sheriff's Office, testified that she examined the laptop and located several fingerprints.

- Brian Annen, a latent print examiner with the Colorado Springs Police Department, testified that he was given 14 latent prints and was provided fingerprint cards of Mr. Trueblood and Mr. Fykes for comparison. He could not find a match. He was able to determine that some results were inconclusive or allowed him to eliminate prints.

- Ted Langley, an assistant system administrator for the Federal Defender's Office, was called as a defense witness. He testified that defense counsel had given him an image of the Sony hard drive on the laptop. Mr. Langley located 62 Microsoft Word files, 47 pdf files, and 135 photographs. The last user-created file was from November 2014. One of the pdf files was the medical damages file pertaining to Mr. Fykes. He did not locate any files that said "Trueblood."

ECF No. 158 at 2-3.

The Court denied the motion for discovery, noting the testimony of four experts listed above (and whose trial testimony had been provided with the government's response). *See* ECF

No. 159.  The Court found that Mr. Fykes had provided no reason for the Court to believe that there might be additional evidence in the possession, custody or control of the government relevant to the usage or ownership of the laptop that might have been exculpatory but that was withheld by the government.  *Id.*  Nor had Mr. Fykes provided any reason to believe that information concerning the last use of the laptop or the server to which the laptop was connected, if determinable by examination of the computer by a qualified expert, was not determinable by the forensic expert in defense counsel's office.  *Id.*  I concluded that Mr. Fykes had not provided "'good reason to believe he may be able to demonstrate [through the discovery he requests] he is entitled to relief.'  *See Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010)."  *Id.*

Mr. Fykes has been convicted of possession or constructive possession of the firearm by a jury; the conviction has been affirmed on appeal; and, with the order issued today, his § 2255 petition has been denied.  Along the way the laptop was examined by experts for the police and for the defendant.  Such evidence as those experts could develop was presented to the jury, as was Mr. Fykes's own testimony about the laptop.  There is nothing to indicate that more examination would yield different results favorable to him.

It is not the role of the Court to act has his advocate or to commit taxpayer dollars to assist Mr. Fykes in what has become a quixotic mission.  Naturally, no court wants an innocent man to be convicted, and if he is factually innocent, a wrong has occurred.  But, in my opinion, Mr. Fykes had a fair trial.  He was represented by experienced and able counsel.  He told his story to the jury.  And, he was convicted.  The conviction was affirmed.  His motion is denied.

## IV. MOTION TO SUPPLEMENT HABEAS PETITION.

I allow, and have considered, his supplement.  ECF No. 168-1.  In substance it is another request to retroactively modify the Probation Office's Presentence Investigation Report by

excising all references to the original human trafficking charge. He notes, correctly, that he was not convicted of the trafficking charge, and that the charge did not affect the Court's sentence in this case. However, he states that the reference to the charge in the PSI has affected his treatment within the BOP. He brings it within aegis of his habeas petition by arguing that his trial counsel, Mr. Harris, should have objected to this information being in the PSI.

I denied his previous motion to modify the PSI to eliminate the references to human trafficking. ECF No. 143. That order was later vacated and instead the motion was dismissed for lack of jurisdiction at the direction of the Tenth Circuit. ECF No. 164. Mr. Fykes now repeats the motion but brings it within the aegis of his § 2255 petition by arguing that Mr. Harris's failure to demand that the subject portions of the PSI be deleted was ineffective assistance of counsel. It was not, and the motion is denied.

## V. MOTION FOR JUDICIAL RECOMMENDATION RE SENTENCE.

Mr. Fykes informs the Court that he is incarcerated at FCI-Big Spring in Texas. He further states that he is scheduled for release to a Residential Reentry Center or "RRC" on March 19, 2019 and a release from prison on September 14, 2019. He asks the Court to recommend acceleration of the date on which he enters the RRC so that his reentry period would be 12 rather that the scheduled six months. ECF No. 169 at 1-2.

Mr. Fykes explains that during his last 3.5 years of incarceration he has taken numerous educational courses, completed a 40-hour non-residential drug abuse program, received no incident reports, has been a model inmate, and feels that he has significantly changed and has bettered himself. He also believes that more time in reentry will better help him adjust to life outside the prison and cope with physical and mental issues, lack of resources, and potential homelessness. *Id.* at 2-4. In support he provides copies of certificate of completion of various

courses, an individualized reentry plan, and information concerning his Social Security disability benefits. *Id.* at 5-59.

This motion was filed on August 20, 2018. Unfortunately, the Court has been unable to complete its review and rule on Mr. Fykes's habeas petition and his several motions, including this motion, until today, which is January 9, 2019. If his dates are correct, he will enter the RRC on March 19, 2019. Therefore, unless I am misunderstanding his motion, it is impossible for him to enter an RRC 12 months before his scheduled final release said to be on September 14, 2019. Even if he were to enter the RRC within a few days of this order he would only gain two months of reentry time.

Nevertheless, it does appear from what he has presented that he has used his prison time productively and that he has seemingly been, as he characterized himself, a model inmate. I do not make it a practice of telling the BOP how to run its institutions. I do not know all the factors that go into a decision as to whether and when an inmate will be placed in an RRC. No doubt the BOP must take into consideration not only the conduct of the inmate but also the impact of its decisions on other inmates, staff and the institution. That said, I note that the government has not responded to this motion. The bottom line is that I am willing to recommend that the BOP consider earlier release to the RRC for Mr. Fykes if that is consistent with the institution's requirements and the availability of a spot in the RRC for him.

**ORDER**

1.      Defendant's habeas petition, specifically plaintiff's motion to vacate, set aside, or correct sentence, ECF No. 150, is DENIED.

2.      Defendant's motion for return of property, ECF No. 165, is GRANTED.

3.      Defendant's motion to appoint an independent digital forensic specialist, ECF No.

166, is DENIED.

4.      Defendant's motion to supplement, ECF No. 168, is GRANTED.

5.      Defendant's motion for judicial recommendation for twelve-month RRC/Community

Confinement, ECF No. 169, is GRANTED IN PART.

DATED this 10th day of January, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge